IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES J. KAUFMAN,

                         OPINION and ORDER

           Plaintiff,

                         11-cv-168-bbc

    v.

JEFFREY PUGH, CRAIG W. LINDGREN,
SANDRA COOPER, TERRY SHUK,
ISMAEL OZANNE, CAROL GARCEAU,
MARC W. CLEMENTS and RANDALL HEPP,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff James Kaufman brought this case under the free exercise clause, the establishment clause and the Religious Land Use and Institutionalized Persons Act to challenge the treatment of atheists like him at the Stanley Correctional Institution. In an order dated September 13, 2012, dkt. #51, I granted defendants' motion for summary judgment on all of plaintiff's claims. The Court of Appeals for the Seventh Circuit affirmed this decision in all respects, with the exception of plaintiff's claim that defendants violated the establishment clause by refusing to authorize a study group for atheists in 2009. Kaufman v. Pugh, 733 F.3d 692, 697-98 (7th Cir. 2013). The court did not resolve this claim as a matter of law in favor of plaintiff, but remanded the case for further fact finding.

After the remand, the court gave both sides an opportunity to engage in additional discovery. Now before the court is defendants' renewed motion for summary judgment.

1

Dkt. #75. In response to defendants' motion, plaintiff attempts to reargue claims that the court of appeals resolved against him, but the law of the case prohibits me from considering these arguments. Kovacs v. United States, 739 F.3d 1020, 1024 (7th Cir. 2014) ("The lower court is bound . . . to the resolution of any points that the higher court has addressed."). The only claim I may consider is the claim that the court of appeals remanded, which is plaintiff's claim that defendants violated the establishment clause by refusing to authorize an atheist study group. With respect to that claim, I conclude that plaintiff's request for injunctive relief is moot and that defendants are entitled to qualified immunity with respect to damages. Accordingly, I am granting defendants' motion for summary judgment.

OPINION

In this court's September 13, 2012 summary judgment opinion, I dismissed plaintiff's claim regarding the atheist study group on the ground that plaintiff had shown that only one other prisoner at the same institution was interested in joining the group. Dkt. #51 at 19-20. I relied on cases such as Cruz v. Beto, 405 U.S. 319, 322 (1972), and Mack v. O'Leary, 80 F.3d 1175, 1181 (7th Cir. 1996), in which the court stated that prison officials may look at the number of adherents a particular religion has at the institution when considering requests for religious accommodation. See also Young v. Lane, 922 F.2d 370, 377-78 (7th Cir. 1991) (prison not required to hire rabbi despite employment of other clergy when less than one percent of prisoners were Jewish); Johnson–Bey v. Lane, 863 F.2d 1308, 1312 (7th

Cir.1988) (noting only that prison's provision of clergy for some religions and not others is "troubling" but nevertheless acceptable "to the extent required by the exigencies of prison administration").

On appeal, the Court of Appeals for the Seventh Circuit did not question the validity of the view that the "the prison has no duty to recognize every minor religion or belief system that attracts at least two inmates." Kaufman v. Pugh, 733 F.3d 692, 697-98 (7th Cir. 2013). Instead, the court concluded that more fact finding was needed because it could "not tell, on the record as it stands, if more inmates would have designated atheism if it had been an option on the [prison's religious] preference form." Id. If the facts showed that the number of atheists at the prison was comparable to the number of prisoners in other minority religions, such as paganism, Judaism and Buddhism, "then there may be no objective basis" for denying plaintiff's request for an atheist group. Id.

Defendants say that they are taking steps now to comply with the decision of the court of appeals, but defendants' conduct now has little relevance to determining whether plaintiff is entitled to any relief. This is because there has been an important factual development in this case since the court of appeals issued its decision. In particular, plaintiff has been released from prison, which means that his request for injunctive relief is moot. Grayson v. Schuler, 666 F.3d 450, 451 (7th Cir. 2012). Thus, regardless how many atheist prisoners are at the Stanley prison now, forming a study group at the prison could not help plaintiff. He has no legal interest in forming a study group that he cannot join.

This leaves the question whether plaintiff may be entitled to nominal or punitive

3

damages. (Under 42 U.S.C. § 1997e(e), plaintiff may not recover compensatory damages because he was a prisoner at the time he filed the lawsuit and he did not suffer a physical injury.) Because defendants have raised a qualified immunity defense, plaintiff cannot recover any damages unless he shows it was clearly established at the time he requested an atheist study group that the establishment clause required defendants to grant the request. Stanton v. Sims, 134 S. Ct. 3, 4-5 (2013); Volkman v. Ryker, 736 F.3d 1084, 1090-91 (7th Cir. 2013). The court of appeals did not address the issue of qualified immunity, so the law of the case does not require a particular result.

There is a colorable argument that defendants were violating clearly established law by refusing to allow prisoners to designate atheism as a religious preference. In a previous dispute between plaintiff and prison officials, the court of appeals held that atheism qualifies as a religion for the purpose of the free exercise clause and the establishment clause. Kaufman v. McCaughtry, 419 F.3d 678, 683–84 (7th Cir. 2005). Further, defendants' continued failure to allow an atheist religious preference was part of the reason the court of appeals remanded this case. In particular, the court stated that, by failing to allow prisoners to designate an atheism preference, "the prison made it impossible to know how many inmates would have joined [an atheist] group, because it ignored 'write-in' votes for atheism (or related schools of thought) and re-characterized them as 'No Preference.'" Kaufman, 733 F.3d at 697.

However, the court of appeals did not suggest that plaintiff could prevail on his claim simply by showing problems with the religious preference form. Rather, the ultimate

4

question was whether defendants violated the establishment clause by allowing prisoners of other religions to hold services but refusing to authorize a study group for atheists.

Plaintiff cannot prevail on that claim, for two reasons. First, despite the opportunity to conduct additional discovery, plaintiff still has not adduced any evidence that more than two prisoners were interested in forming a study group. Rather, defendants submitted the only evidence related to this point, which is that only four prisoners currently housed at the Stanley prison identify as an atheist, humanist or agnostic. Dfts.' Add. PFOF ¶ 171, dkt. #76 (Defendants tabulated that number by sending a survey to all current prisoners who had indicated "no preference" on their religious preference forms. Id. at ¶¶ 169-70.) The evidence defendants cite is not directly on point because there may have been a different number of atheist prisoners in 2009, but it is some evidence that there would not have been enough prisoners to establish an "atheist/humanist/agnostic" study group. Plts.' PFOF ¶ 32, dkt. #43 (smallest designated religious group at prison had 28 members in 2011). In any event, plaintiff does not point to any evidence suggesting that the demand would have been greater in 2009.

Second, even if I assume that there were more atheist prisoners in 2009 and that defendants should have allowed prisoners to designate atheism as a religious preference, this would not have stopped atheist prisoners in 2009 from contacting defendants to let them know that the prisoners were interested in forming a study group. Although the court of appeals concluded that defendants were required to take proactive measures to determine for themselves whether there may have been more interest in the group, the court did not

suggest that its holding already was clearly established. The court did not cite other cases that previously had reached the same conclusion and plaintiff does not cite any cases now. Accordingly, I conclude that defendants are entitled to qualified immunity.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Jeffrey Pugh, Craig Lindgren, Sandra Cooper, Terry Shuk, Ismael Ozanne, Carol Garceau, Marc W. Clements and Randall Hepp, dkt. #75, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 20th day of June, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge